Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE-MARIE DEHERRERA, *individually and on behalf of all those similarly situated*,<br><br>                              *Plaintiff*,<br><br>v.<br><br>GARDEN OF LIFE, LLC, *a Delaware limited liability company*,<br><br>                              *Defendant*. | No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Ann-Marie DeHerrera ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against Garden of Life, LLC ("Garden of Life" or "Defendant"), alleging that its Organic Plant-Based Protein ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they contain excessive and unsafe levels of heavy metals, and upon information and belief and investigation of counsel alleges as follows:

### PARTIES

1. Plaintiff Annemarie DeHerrera is and at all times relevant was a citizen of the state of California, domiciled in Upland, California. She purchased the Products from Amazon.com

on or about December 8, 2021; December 14, 2021; January 13, 2022; April 1, 2022; June 30, 2022; December 9, 2022; March 1, 2023; April 28, 2023; June 30, 2023; August 6, 2023; September 28, 2023. On information and belief, she also purchased the Products at other times in the Class period at brick and mortar retail outlets including Sprouts Market and Walmart. After purchasing the Products, she consumed the Products on a daily or near-daily basis throughout this period.

2. Defendant Garden of Life, LLC is a Delaware limited liability company with its principal place of business in Palm Beach Gardens, Florida. On information and belief all decisions regarding formulation and labeling of the Products are made at this principal place of business and no member of the limited liability company is a resident or citizen of California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interests and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to at least one Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. At least one Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to at least one Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

# FACTUAL ALLEGATIONS

15. According to Defendant, the Products are "CLEAN AND CERTIFIED" and "rigorously tested for banned substances." See https://www.amazon.com/Garden-Life-Organic-Plant-Based-Protein/dp/B01N7DTD98?ref_=ast_sto_dp&th=1.

16. Defendant also asserts that the Products are "[d]esigned for athletes and active adults seeking clean, effective nutrition" and are "trusted by athletes who refuse to compromise on ingredients."





17. These claims are false, as independent third-party testing has revealed that the Products' contain excessive and dangerous levels of lead. Defendant deceptively marketed and labeled the Product as safe while concealing and failing to disclose that the Product contain dangerous concentrations of lead.

18. According to investigative reporting by *Consumer Reports*, just one serving of the Product was found to contain 2.76 micrograms of lead, which is about 564 percent of *Consumer Reports'* recommended daily lead limit. *See* https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/.

19. As a result, *Consumer Reports* recommends consumers do not consume more than 1 ¼ serving of the Product per week:



20. Lead is a well-documented neurotoxin that poses serious risks to public health.

21. The levels of lead in the Product far exceed thresholds considered safe by public health experts, and pose significant risks to children, adults, and pregnant individuals. Yet nowhere in advertising or the Products' packaging does Defendant inform its customers of such lead content, or recommend that they limit their use of the Product to about single serving per week. To the contrary, Defendant falsely states that it regularly tests its Products for unsafe ingredients, implying to reasonable consumers that daily or near-daily use of the Products is safe.

22. Exposure to lead causes irreversible harm. It impairs cognitive development, reduces IQ, causes behavioral disorders and learning disabilities in children, and increases the risk of miscarriage, premature birth, and long-term cardiovascular, renal, and neurological conditions in adults. The Centers for Disease Control and Prevention ("CDC"), the American Academy of Pediatrics ("AAP"), and the World Health Organization ("WHO") uniformly conclude that no amount of lead exposure is safe.

23. Lead is a cumulative toxin in bones and soft tissues, where it continues to disrupt critical biological functions long after exposure. The risk intensifies with repeated or prolonged exposure. As the Mayo Clinic warns, "Signs and symptoms usually don't appear until dangerous amounts have accumulated." *See* https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptomscauses/syc-20354717.

24. The U.S. Centers for Disease Control also states, "The effects of lead poisoning can be permanent and disabling." *See* https://www.cdc.gov/lead-prevention/about/index.html.

25. The WHO reports that "[l]ead exposure causes a significant burden of disease." *See* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

26. And according to the U.S. Environmental Protection Agency ("EPA"), ingesting lead can result in seizures, coma, and death. *See* https://www.epa.gov/lead/learn-about-lead.

27. Exposure to lead contributed to more than 1.5 million deaths in 2021. *See* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

28. Consumers reasonably expect health supplements like the Product to be free of (or contain only minimal amounts of) harmful heavy metals such as lead. Had consumers including Plaintiff known that the Products contained lead in excessive and unsafe amounts, they would have paid significantly less, or not purchased the product at all.

29. Yet, Defendant's marketing does not disclose that the Product contains lead in excessive amounts or should be limited to about a single serving per week. No such warnings appear on the packaging or ingredients list. The omission of this critical fact misleads consumers and undermines their ability to make informed purchasing decisions.

30. Instead, Defendant concealed the risk and continued to market the Product as safe. Defendant recklessly disregarded its duty to ensure the Product was manufactured safely, resulting in products tainted with toxic contaminants.

31. As a result of Defendant's concealments and misrepresentations, consumers paid a price premium for contaminated products. The Product is worth far less—or nothing at all—

because it contains known and dangerous levels of neurotoxins. Plaintiff and Class members suffered real economic harm as a result of these misrepresentations and omissions.

32. Defendant's omissions and misrepresentations deprived consumers of the ability to make informed decisions and induced them to pay a price premium for a product that is, in fact, worth significantly less, or nothing at all.

33. As described above, Plaintiff suffered an actual and imminent threat of future harm that cannot be cured with monetary damages. For this harm, Plaintiff lacks an adequate remedy at law and require injunctive relief.

34. Plaintiff will, upon amendment of this Complaint, seek damages and, in the alternative, equitable restitution. Plaintiff seeks restitution under the Unfair Competition Law and False Advertising Law in the alternative because she has no adequate remedy at law.

35. A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Product she received has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased products that she would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

36. Also, winning damages under the CLRA requires additional showings not required under equitable causes of action. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment, the UCL, and the FAL broadly prohibit "unfair" conduct.

37. By the same token, Plaintiff's common law claims require additional showings, compared to her unjust enrichment claim. For example, to prevail on her breach of warranty claim, Plaintiff needs to show that the statements she challenges constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under an unjust enrichment theory. And unjust enrichment exists in part because contractual claims are often

more difficult to establish. In this way, Plaintiff's UCL, FAL, and unjust enrichment claims are more certain than her legal claims.

38. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

40. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

41. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

42. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

43. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believe and aver there are thousands of Class members geographically dispersed throughout the state of California.

44. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

-9-
CLASS ACTION COMPLAINT

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

c. Whether Defendant breached an express warranty;

d. the proper amount of damages;

e. the proper scope of injunctive relief; and

f. the proper amount of attorneys' fees.

45. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

46. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

47. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

48. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

49. There are no defenses available to Defendant that are unique to the named Plaintiff.

50. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members'

interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

51. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

52. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

   d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

53. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

54. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Plaintiff would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because he cannot rely on the Products' labelling, given the omission of warnings regarding heavy metal content. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

55. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of heavy metal content in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

56. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

57. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***

58. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

59. Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

60. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

61. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

62. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the excessive and unsafe levels of heavy metals in the Products.

63. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

   e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

64. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

65. Concurrent with the filing of this Complaint, Plaintiff will be giving notice pursuant to Cal. Civ. Code § 1782 and will, absent corrective action, amend this Complaint to seek actual damages.

66. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

67. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

68. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur*. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

69. The same is true of Florida law. "Although it is well established that an unjust enrichment claim cannot be maintained when there is … a legal remedy, [citation omitted] it is equally clear that a plaintiff may **_assert_** a claim for unjust enrichment as an alternative" to a claim for damages. *Rosado v. Barry University Inc*., 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) (emphasis added) (citing *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018)).

70. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by failing to disclose the excessive and unsafe levels of heavy metals in the Products.

71. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

72. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

73. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

74. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

75. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

76. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY**

77. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

78. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products were free of excessive and unsafe levels of heavy metals in the Products.

79. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an implied warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

80. The Products do not conform to the implied warranty that the Products were free of excessive and unsafe levels of heavy metals in the Products.

81. As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' levels of heavy metals; (b) they paid a price premium based on Defendant's implied warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

82. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

83. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "UNFAIR" CONDUCT**

90. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

91. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

92. Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose that the Products contain excessive and unsafe levels of heavy metals.

93. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

94. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

95. Defendant publicly disseminated untrue or misleading representations regarding the heavy metals contents of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

96. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq*.

## COUNT 5
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq*. — "FRAUDULENT" CONDUCT

97. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

98. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

99. Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

100. Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose that the Products contain excessive and unsafe levels of heavy metals.

101. As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

102. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

103. Defendant publicly disseminated untrue or misleading representations regarding the heavy metals content of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

104. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "UNLAWFUL" CONDUCT**

105. Plaintiff reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

106. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

107. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

108. Defendant's business practices, as alleged herein, are "unlawful" because it fails disclose that the Products contain excessive and unsafe levels of heavy metals.

109. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities she would not otherwise have spent or conducted.

110. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

111. Defendant publicly disseminated untrue or misleading representations regarding the heavy metals contents of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

112. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

### COUNT 7
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *et seq*.

113. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

114. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

115. Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

116. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

117. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

118. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

119. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the statutes described herein and/or was unjustly enriched and/or breached an implied warranty;

c. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

e. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

November 19, 2025